[No. 14776. Department Two. — August 9, 1892.]

## J. W. BEALL, RESPONDENT, v. S. C. FISHER, APPELLANT.

EVIDENCE — TERMS OF WRITTEN AGREEMENT. — When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and as between the parties there can be no other evidence of the terms of the agreement, except in certain cases mentioned in section 1856 of the Code of Civil Procedure.

ID. — MERGER OF ORAL NEGOTIATIONS. — All the oral negotiations and agreements concerning the exchange of lands are merged in the deeds and mortgages given in pursuance of such negotiations, and evidence of prior negotiations contradicting the terms of such instruments is inadmissible.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion.

*Oregon Sanders*, and *Church & Corey*, for Appellant.

*H. H. Welsh*, for Respondent.

VANCLIEF, C. — On May 12, 1890, plaintiff was the owner of 320 acres of land situated in the county of Fresno, subject to a mortgage to secure his debt to the mortgagee, then amounting — principal and interest — to about $5,700. At the same time defendant owned 1,010 acres of land situated in Tulare County, subject to

a mortgage to secure his debt for the principal sum of $6,060, on which had then accrued about $118 interest.

On that day verbal negotiations were commenced between plaintiff and defendant for an exchange of their lands, and proceeded so far that they supposed they understood each other as to the terms upon which the exchange was to be made. About ten days thereafter (May 22d), they met at the office of Mr. L. L. Cory, an attorney at law and notary public, for the purpose of executing the deeds and other writings necessary to effect the exchange. Nothing of their previous negotiations had been reduced to writing. Mr. Cory drew the deeds and other papers, which were then executed, consisting of a deed from plaintiff to defendant of the land in Fresno County, subject to the mortgage above mentioned, which mortgage the defendant by the terms of the deed assumed and agreed to pay; also a deed from defendant to plaintiff of defendant's land in Tulare County, which deed contained the following: "This grant is made subject to a mortgage for $6,060 to the California Savings and Loan Society, which the grantee assumes and agrees to pay," and also a promissory note of defendant to plaintiff for $3,000, to secure which defendant executed to plaintiff a mortgage on the land in Fresno County which had been conveyed to him by the plaintiff.

This action is founded upon what is alleged to have been the verbal agreement on May 12, 1890. Plaintiff alleges that the verbal agreement was to the effect that the defendant was to pay the interest upon his mortgage on the Tulare County land up to the date when the deeds should be executed, and also "to pay said plaintiff upon the day when said conveyance and exchange should be made, as one of the considerations for said exchange, the sum of $360, the difference between $5,700, amount of mortgage upon plaintiff's land, and $6,060, amount of mortgage upon said defendant's land." Plaintiff also claims that defendant is indebted to him in the sum of twenty dollars, for interest on the note and mortgage

for three thousand dollars above mentioned. It is alleged that defendant has refused to pay any of these several sums.

The defendant denies the alleged verbal agreements, and alleges, in substance, that all verbal negotiations for the exchange of lands were merged in the above-mentioned deeds, note, and mortgage.

The court found for plaintiff on all the issues, and rendered judgment in his favor for the amount of the several sums claimed.

Defendant appeals from the judgment, and from an order denying his motion for a new trial.

1. Appellant contends that all prior oral negotiations and agreements between the parties we're merged in the deeds, mortgage, and promissory note drawn by Cory and executed by the parties on May 22, 1890; and that the court erred in admitting in evidence, against defendant's objections, such prior negotiations; and this point seems to be well taken.

Section 1625 of the Civil Code provides that "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." And it is provided by section 1856 of the Code of Civil Procedure: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms"; that as between the parties, there can be no other evidence of the terms of the agreement, except in certain cases, of which this is not one. And further declares that "the term 'agreement' [used in this section] includes deeds and wills, as well as contracts *between parties.*" (*Nicholson* v. *Tarpey*, 89 Cal. 617; Wharton on Evidence, secs. 1014, 1054.)

In this case the plaintiff was permitted to testify, not only to prior negotiations, but also to alleged prior agreements flatly contradictory of the terms of the deed which he accepted from the defendant; not for the pur-

pose of disputing, correcting, or construing the deed, but for the purpose of compelling the defendant to pay money, which, by the plain terms of the deed, he (plaintiff) had assumed and agreed to pay.

That the negotiations were continued up to and during the time the deeds were being drawn by Mr. Cory, and that plaintiff accepted the defendant's deed with full knowledge of its contents and meaning, is made clear by his own testimony, as follows: —

"When the papers were drawn up, Mr. Fisher, G. Frank Abbott, Mr. Cory, and myself were present. I told Mr. Fisher at that time that there was a difference of over three hundred dollars due me. I had spoken to him several times of the difference in the mortgages in my favor. Mr. Fisher said that he was not to pay that; that he would not pay it, or something. Don't know exactly what he did say. He expressed himself as not desiring to pay it.

"Q. Did n't he say that that was not the agreement, that it was all understood, and that was not the agreement, and that he was to give you a mortgage for three thousand dollars?   A. Just what he said I could n't tell you.

"Q. Was not that the substance?   A. He said he was not to pay that; was not going to pay it. This took place before the papers passed. After that I took the deed and accepted the three-thousand-dollar mortgage. I could, as a matter of fact, have refused to have gone on with the trade then. I thought of doing it, but did not. Mr. Fisher had refused to pay me this money. I did n't know that he positively refused to pay it. He said that was not his understanding. He never agreed at any time after that to pay it. At the time the trade was made and the deed and papers passed he did n't agree to it. At that time I told him, — I said there was a difference there which was due me. Mr. Fisher said he did n't understand he was to pay it. I did n't say, 'All right, let 's go ahead.' After this the papers passed, — my deed to Mr. Fisher and his deed to me."

2. As to the count for twenty dollars interest on the

mortgage for three thousand dollars, the evidence was not subject to the objection above considered, and though conflicting, was sufficient to justify the finding upon that count.

I think the judgment and order should be reversed, and a new trial granted.

BELCHER, C., and TEMPLE, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed, and a new trial granted.

SHARPSTEIN, J., McFARLAND, J., DE HAVEN, J.