# APPELLATE COURT

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1894, IN THE SEVENTY-NINTH YEAR OF THE STATE.

———————◆———————

### No. 1,212.

### KIRWAN ET AL. *v.* VANCAMP PACKING COMPANY.

AGENCY.—*Ambiguous Order to Agent.*—*When Principal Can Not Repudiate Act of Agent as Unauthorized.*—If a principal give an order to an agent in such uncertain terms as to be susceptible of two different meanings, and the agent, in good faith, adopts one of them, the principal will not be permitted to repudiate the act as unauthorized because he meant the order to be read in the other sense.

SAME.—*Ambiguous Instruction to Agent Construed Most Strongly Against Principal.*—If an instruction given to an agent is equivocal, obscure, or ambiguous, it will be construed most strongly against the principal.

SAME.—*Sale.*—*Breach of Contract.*—*Damages.*—*Broker.*—*"About" Three Carloads.*—*Insufficient Answer.*—Where a packing company in Indianapolis wrote to a broker in New York, stating that they had "on hand about three carloads of 2-lb. corn cans * * * which we will not need this season," requesting the broker to sell them at a named price, which the broker did, an answer in an action by the vendee for damages for failure to deliver the three carloads (only two carloads having been delivered) was insufficient on demurrer which averred, in substance, "that," admitting the letter written and the acceptance by the broker, "plaintiffs ought not to recover, because there is no fixed number of 2-lb. corn cans recognized in the trade as constituting a carload, but that the number always depends upon the size of the car in which shipped;"

alleging, also, that defendant is not a manufacturer of tin cans and not a merchant engaged in the buying and selling of such cans for a profit, but only buys such cans for use in the prosecution of its business as a packer of fruits and vegetables, which facts the broker well knew; that the cans offered for sale was a surplus over and above what was needed for such canning purposes that season; that defendants did not know how many of such cans it did have, but estimated the same, as nearly as it could, from the dimensions of the space occupied by them.

From the Marion Circuit Court.

*A. Rabb* and *D. H. Bowles,* for appellants.

*J. S. Duncan* and *C. W. Smith,* for appellee.

LOTZ, J.—Appellants were plaintiffs below. The first paragraph of their complaint avers that on the 15th day of August, 1890, the defendant wrote to Chas. S. Trench & Co., who at that time were brokers, with offices in the cities of New York and Baltimore, a letter, of which the following is a copy:

"INDIANAPOLIS, IND., August 15, 1890.

"Chas. S. Trench & Co., New York:

"DEAR SIR: We have on hand about three car loads of 2lb. corn cans, made by the Dugdale Can Co., which we will not need this season. We wish to get them out of the way at once, and are willing to sell them at $1.90 in cash f. o. b. here. This price is considerably below the present market, and we hope you will be able to sell them for us at once. Our offer is subject to cans being unsold on receipt of order.      Yours Truly,

"VANCAMP PACKING CO."

That on the 19th day of August, 1890, Chas. S. Trench & Co., of Baltimore, as such brokers and for and on behalf of defendant, and in accordance with the terms and conditions of said letter, made sale to plaintiffs of about three car loads of two-pound corn cans, at $1.90 cash f. o. b. Indianapolis, and as such brokers, and for and on

behalf of plaintiffs, notified defendant of acceptance of offer contained in said letter, by telegram, as follows:

"BALTIMORE, August 19, 1890.

"VanCamp Packing Co., Indianapolis, Ind.:

"We accept your offer on two-pound cans. Await instructions.          C. S. TRENCH & Co."

That plaintiffs, on their part, complied with the contract so made, and sent shipping instructions for such cans, but that defendant shipped only two cars of cans containing only 115,600 cans, and that, upon demand being made, defendant refused to ship more; that an average car of two-pound corn cans consists of 70,000 cans, and that plaintiffs expected to receive about three cars of 70,000 cans each, or in all about 210,000 cans; that because of defendant's failure to ship the remaining car plaintiffs were compelled to go out into the market and buy cans to fill contracts to the number of 66,000, and were damaged in the sum of $726.

The second paragraph of complaint makes same allegations as above, and further alleges that upon making sale as aforesaid, Trench & Co. issued and delivered to plaintiffs a bought note for such cans, and to defendant a sold note for the same.

The third paragraph of complaint counts simply on the bought and sold notes, with otherwise the same allegations.

Defendant answered in two paragraphs:

First. General denial. Afterwards withdrawn.

Second. In substance as follows: Admitting writing the letter of August 15 and receipt of the telegram of August 19, the execution of the bought and sold notes, the receipt of shipping directions, and that it shipped only 115,600 cans, all of which were contained in two freight cars; and, further alleging that plaintiffs ought not to recover, because there is no fixed number of two-

pound corn cans recognized in the trade as constituting
a car load, but that the number always depends upon
the size of the car in which shipped; that the defendant
is not a manufacturer of tin cans, and is not a merchant
engaged in the buying and selling of such cans for a
profit; that it is engaged in the packing of corn, vege-
tables and fruits in the cans of various sizes, and con-
structed according to the purpose for which they are
used; that it deals ordinarily in such cans only as it
purchases them for use in the prosecution of its business
as such packer of fruits and vegetables, which facts were
well known to said Trench & Co. at the time of the re-
ceipt of the said letter of August 15, 1890; that it had
purchased for its own use in the corn-packing season for
the year 1890 a large number of said cans, with the ex-
pectation of using the same for packing corn, but that
at the close of the season for so packing corn, it found
that it had on hand a large surplus of such cans over
and above what was needed for that purpose; which cans,
so situated in its warehouse, were a hindrance to it in
the prosecution of its business of packing later fruits and
vegetables; that it was desirous of selling all such cans
as it then had in its possession; that it did not know
how many of such cans it actually did have in its posses-
sion, but estimating the same as nearly as it could from
the dimensions of the space occupied by such cans, it
estimated the number as being about equivalent to the
number which three ordinary cars would contain. And
thereupon, with a view to finding a purchaser for such
cans, it addressed to said Charles S. Trench & Co., who
were brokers in the city of New York, the letter which is
referred to and set out in the complaint.

It is also alleged that upon receiving the telegram
from Trench & Co., of August 19th, and shipping
directions, defendant shipped two cars of cans, and

found that it had no more, and so notified Trench & Co. of that fact, who at once gave notice to the plaintiffs.

The appellants demurred to this paragraph of answer for want of facts. This demurrer was overruled. Appellants elected to stand upon their demurrer, and refusing to plead further, judgment was rendered against them. They have assigned as error in this court the overruling of the demurrer to this paragraph of answer.

The principal controversy in this case arises from the use of the word "about" as found in the letter of the date of August 15th.

The appellant contends that under all the facts presented by both the complaint and answer, Trench & Co. were authorized to sell a specified quantity of cans, to wit: three car loads subject to such variation as is allowable under the word "about" of from three to five percentum of the quantity designated.

The appellee insists that Trench & Co. were only authorized to sell a certain lot of cans, of no given number or quantity; that the word "about" was used merely to estimate the quantity of cans contained in the given lot, and that Trench & Co. had no right to put any other construction on the letter.

If a written contract is plain, certain and definite in its terms, there is no occasion for construction. If ambiguity or uncertainty exists, the court in construing it should take into consideration the situation and relation of the contracting parties as they appear from the instrument itself. It may also consider extrinsic matters, such as the surrounding circumstances when properly averred. The primary object is to ascertain the intention of the contracting parties. The court in construing should consider the subject-matter of the agreement, and the knowledge of it possessed by both parties, the objects

to be accomplished, and the motives which they had in dealing with each other.

If the word "about" were omitted from the letter there would be no doubt as to its meaning. It would then direct Trench & Co. to sell a certain definite quantity of cans, three car loads. The use of the word "about" clearly indicates that it was not precisely three car loads that the brokers were authorized to sell. It is a possible and plausible construction to say that this word indicates that the quantity or number of cans was not definitely known, but was three car loads more or less. The quantity is fixed within narrow limits. It is three car loads allowing for a slight variation either way of from three to five per centum of the named quantity. Such construction is permissible when it is apparent that the parties are dealing with a quantity approximately but not precisely known. Benjamin Sales (3d ed.), sections 919 to 924; *Brawley* v. *United States*, 96 U. S. 168.

It is also a possible and plausible construction to say that the word "about" indicates but an estimate of a particular lot, parcel or quantity occupying a given space. *McLay* v. *Perry*, 44 L. T. R. 152; *Morris* v. *Levison*, 1 C. P. Div. 155; *Brawley* v. *United States*, *supra*.

Both of these constructions fairly arise from the face of the instrument itself.

The fact that appellee averred extrinsic matter, the surrounding circumstances, lends support to the conclusion that the contract is ambiguous. Considering all the facts as they appear from the face of the writing, and from the pleadings, and viewing them in a light most favorable to appellant, and we have this state of facts: The VanCamp Packing Company was engaged in the business of packing corn, fruits and vegetables in cans.

It was not a manufacturer of cans, nor a merchant engaged in buying and selling cans for profit. These facts were well known to Trench & Co. But Trench & Co. did not know that it had purchased more cans than it needed for its business. Under these conditions it writes and sends the letter of August 15th. The letter advises Trench & Co. that the appellee has on hand more cans than it will need for its business for that season, and that it is desirous of getting this surplus out of its way at once. The inference may be drawn that the surplus cans were in the way, or occupied a space in appellee's establishment which it desired to use in conducting its business. But there is nothing to indicate that the surplus cans were a particular lot, parcel or quantity occupying a given space; nor is there anything to show that they were a distinct lot separated from other cans in appellee's establishment. For aught that appears, the cans may have been a part of a lot of thousands of other cans which the appellee intended to use in its business. Trench & Co. never saw the cans, nor the space occupied by them. The brokers were several hundred miles away and had no opportunity of seeing them, but were instructed to make sale at once.

What could the appellee have intended Trench & Co. to understand by their letter under such circumstances? If the lot or quantity of cans was so indefinite as to include only the surplus in appellee's establishment, surely the brokers would not be in a position to find a customer readily. The brokers could not determine what quantity of cans they were authorized to sell, nor the purchasers the quantity they were buying. Neither had ever seen the lot or the space occupied by them. If the quantity was merely estimated, the purchaser would be compelled to take the lot, no matter how much it exceeded or fell short of the estimate, whether there was one car load or

ten.   If the quantity was so indefinite, it was not prob-
able that a sale could be made at once.

A natural and reasonable construction to be put upon
the letter, under the circumstances, was that the brok-
ers were authorized to sell for appellee three car loads of
cans, with such slight variation as is allowable under the
term "about."

The appellee's learned counsel have presented another
construction which seems equally reasonable and plausi-
ble to the effect that the word "about" was used only as
an estimate of the quantity, and have cited authorities
which lend support to their position.   We do not deter-
mine which is the better or more plausible construction.
What we do hold is that the contract is ambiguous, equiv-
ocal and obscure in its meaning; that Trench & Co.
made a reasonable and plausible construction of it under
the circumstances apparent and averred.   The appellee
had it in its power to make its letter of instructions de-
finite and certain.   It had the opportunity to ascertain
approximately at least the quantity of cans.   Trench & Co.
had no such opportunity.   It is a familiar rule that
when a contract is equivocal, obscure or ambiguous it
will be construed most strongly against the party using
the language.   *Falley* v. *Giles*, 29 Ind. 114; *National
Bank* v. *Insurance Co.*, 95 U. S. 673; Parsons Cont.,
volume 2, p. 506.*   And with much reason is this rule
applied where one gives an ambiguous instruction to an
agent.

In Wharton Agency, section 224, it is said:   "Where
language is ambiguous, and the agent *bona fide* adopts a
permissible construction, the principal can not, on the
ground that such construction was not intended by him,
disown and dishonor the act of the agent.   In other
words, 'when a principal,' to adopt the language of
Blackburn, J., in an opinion given by him in the House

of Lords' 'gives an order to an agent in such uncertain terms as to be susceptible of two different meanings, and the agent *bona fide* adopts one of them, it is not competent to the principal to repudiate the act as unauthorized, because he meant the order to be read in the other sense, of which it is equally capable.' '' See, also, sections 223 and 248 of same work and *Hopwood* v. *Corbin*, 63 Ia. 218; *Foster* v. *Rockwell*, 104 Mass. 167.

Judgment reversed with instructions to sustain the demurrer to the second paragraph of answer.

DAVIS J. and GAVIN, J., dissent.

Filed Feb. 1, 1895.