[Civ. No. 10148.  First Appellate District, Division Two.—January 6, 1937.]

GEORGE L. BROY, Respondent, v. CALAVERAS CEN-TRAL GOLD MINING CO., LTD. (a Corporation), et al., Appellants.

Abbott, Cannon, Appel & Dains and Philip C. Boardman for Appellants.

Edgar C. Levey and Marvin E. Lewis for Respondent.

STURTEVANT, J.—In this action the plaintiff sued to recover a judgment against the three defendants for services alleged to have been rendered. The trial court made findings in favor of the plaintiff against all three defendants and from the judgment entered thereon all of the defendants have appealed.

Formerly Harry Sears was the owner of the Victor mine located in Calaveras County. He conveyed to the Calaveras Central Mining Corporation, hereinafter called the lessor. The latter executed a lease on June 4, 1930, to the Calaveras Central Operating Corporation, hereinafter called the lessee. The latter changed its name to Calaveras Central Gold Mining Corporation. The lease was made for a term of ninety-nine years. Among others, it contained a covenant that the lessee would operate the mine, extract the valuable ores, sell the same and pay 10 per cent of the proceeds to the lessor weekly. The lessee was incorporated with a capital stock of $1,000,000 divided into shares of one dollar each and on May 2, 1931, it had in its treasury of unsold stock 400,000 shares. On that date the lessee executed and delivered to George L. Broy, the plaintiff, a contract to buy and sell the said 400,000 shares for $230,000. Said contract was expressly made conditional depending on a permit being granted by the corporation commissioner. No other party joined in that agreement. The commissioner issued a permit authorizing the sale of 200,000 shares and refused a permit to issue the remaining 200,000 shares. The said contract did not on its face contain any provision as to the payment of commissions. The permit did not expressly contain any such provisions but, on the contrary, it contained a clause that the sales prices named in said contract should be net to the

vendor. On June 12, 1931, Broy assigned his contract to Serlis, Coplin & Co., Ltd. The latter sold the stock to a large number of stockholders, to wit, four hundred or more. Later Broy commenced this action to recover an alleged commission of $7,650 for services rendered.

The defendant Sears asserts that the plaintiff rendered no services for him. The plaintiff replies that he did. In that connection he quotes evidence showing that he held his conversations and had communications with the defendant Sears. That is true, but it is also true from the very beginning the plaintiff was informed the defendant Sears was acting as the agent of the lessee and that the latter was the party in interest and the defendant Sears committed no act which would render him personally liable. (Civ. Code, sec. 2343.)

The lessor asserts that the plaintiff rendered no services for it. The plaintiff replies that when the negotiations commenced, that corporation was the sole party in interest and Mr. Sears was its duly authorized agent. Be that as it may, it was seen at once that nothing could be done to an advantage in attempting to finance it. A new corporation had been formed, a lease had been made to it, and said lessee, the Calaveras Central Gold Mining Co., Ltd., was financed.

But, the plaintiff contends the lessee was organized as the agent of the lessor and therefore the lessor is liable. (*Kelly* v. *Ning Yung Ben. Assn.*, 2 Cal. App. 460 [84 Pac. 321].) The case cited differs from the case in hand in many material respects. The lessee corporation was not owned by the lessor, but was an entirely separate entity. Each had a different set of stockholders. The lessor reserved a rental of 10 per cent of the moneys received from the sale of minerals extracted by the lessee; otherwise, it retained no interest or control during the term of the lease. Fraud was not intimated. It follows the corporate entity of each may not be ignored. (*Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 Pac. 673].)

Finally, the lessee contends that under the evidence the plaintiff performed no services for it, and, under the facts, the transaction between them was solely one of entering into a contract to buy and sell. The plaintiff asserts that said contention is not sustained by the proof. The point involves the following facts: Early in 1931 Mr. Sears

called on the plaintiff and asked for a personal loan of $30,000. He was told the loan could not be made by the plaintiff. The conversation led to a full statement by Mr. Sears regarding the Victor mine, about the affairs of the lessor, and about the affairs of Calaveras Central Operating Corporation, the lessee. Later the plaintiff stated he knew some people whom he thought he could interest. On April 9, 1931, before introducing Mr. Sears to those people, at the plaintiff's request, Mr. Sears wrote on his business card: "Mr. George L. Broy. In the event I should conclude business with the people you are about to introduce me to, I hereby agree to pay 10% of any and all amounts received by me from them." Having received that card the plaintiff took Mr. Sears to the office of, and introduced him to, the firm of Serlis, Coplin & Co., Ltd., other stockbrokers. The negotiations with Serlis, Coplin & Co. led to the execution of a written contract to buy and sell 400,000 shares of the capital stock of the lessee. It was sealed and dated May 2, 1931. It names this plaintiff as purchaser, and the lessee as the seller. The purchaser assigned the contract to Serlis, Coplin & Co. By its terms the stock purchased was divided into twelve blocks, some 25,000 and some 50,000 shares each. The price on the first block was written at twenty-five cents per share and each succeeding block was five cents higher. That instrument contained a covenant that it was conditional upon obtaining a permit from the corporation commissioner. As stated above, the commissioner executed a permit providing that the prices named should be net to the vendor. Later Serlis, Coplin & Co. sold stock to about four hundred stockholders in the total sum of $85,000. Having recited the foregoing facts the plaintiff asserts the lessee obtained the finances it sought and that he was the procuring cause.

When the memorandum dated April 9, 1931, was executed Mr. Broy and Mr. Sears agreed it would do until a formal contract was executed and Mr. Broy testified that it was executed in response to his suggestion that he could get others interested in a stock issue. Later the formal contract of May 2, 1931, was executed, it was with reference to a stock issue, and, under settled rules of law it superseded the informal written memorandum dated April 9, 1931. (*Spinney* v. *Downing*, 108 Cal. 666, 668 [41 Pac. 797].) Under the uncontroverted facts another rule is applicable.

The execution of the contract dated May 2, 1931, superseded all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of it. (Civ. Code, sec. 1625; *Peterson* v. *Chaix*, 5 Cal. App. 525 [90 Pac. 948]; *Calpetro P. Syndicate* v. *C. M. Woods Co.*, 206 Cal. 246 [274 Pac. 65].) In the Peterson case the court cites and follows *Faulkner* v. *Smith Wall Paper Co.*, 88 Iowa, 169 [55 N. W. 200, 45 Am. St. Rep. 230]. It is a very instructive discussion of the rule and is closely similar in its facts to the instant case. ■ The contract dated May 2, 1931, was expressly made conditional on the issuance of the permit of the corporation commissioner. On that contract no commissions or compensation could be charged for two reasons. The contract did not so provide. In the second place the permit provided that the prices should be net to the seller.

■ The defendants make a further objection to any relief being granted to the plaintiff for services rendered to them or any of them. For some time prior to April 9, 1931, the plaintiff was a broker acting as an independent operator. But he had a standing agreement with Serlis, Coplin & Co. under which the latter agreed to pay him a commission of 10 per cent on sales of stock made by Serlis, Coplin & Co. on business procured by this plaintiff. Said agreement was in full force when on April 9, 1931, the plaintiff demanded from Mr. Sears the said contract. However, the fact that the plaintiff held such an agreement with Serlis, Coplin & Co. was not disclosed to Mr. Sears. The defendants contend that under such circumstances as recited above the plaintiff's purported contract will not be enforced by the courts. (*Glenn* v. *Rice*, 174 Cal. 269, 272 [162 Pac. 1020].) The plaintiff does not question the doctrine of that case but he admits he had bargained for compensation from both buyer and seller, claims he had the right to do so, and cites and relies on *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 Pac. 960]. That case did not involve a secret profit. It did not purport to discuss the subject. It did involve a contract "to introduce" a prospective buyer to one holding an executory contract to sell. The facts in the case at bar are quite different. Serlis, Coplin & Co. were stockbrokers. Mr. Broy was a stockbroker and employed by that company. The defendants were seeking finances. Mr. Broy undertook to obtain from the lessee a contract to sell to Serlis, Coplin & Co., his prin-

cipal, blocks of stock at a fixed price per share and in turn resell said stock at an advance price. He carried out that undertaking. In doing so he first called on Serlis, Coplin & Co., and caused that company to take up the matter of selling said stock. He held conversations with the representative of the lessee and induced it to agree to a sale of the stock. He then brought the seller and buyer together. Continuing, he caused to be prepared the sales contract in the form in which Serlis, Coplin & Co. directed. Continuing, he assisted in presenting the application to the commissioner of corporations for a permit to authorize the sale of said stock to the public. After the permit was obtained he actively participated in making sales to the public. The acts of the parties thus clearly defined the nature and scope of the contract. (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 521 [153 Pac. 951].) As to the plaintiff's right to charge both the defendants and Serlis, Coplin & Co. for compensation we think the rule stated in *Glenn* v. *Rice, supra,* is controlling. At page 272 the court said: ''The authorities, with practical unanimity, declare that if an agent is engaged by both parties to effect a sale of property from one to the other, or an exchange between them, not as a mere middleman to bring them together, but actively in inducing each to make the trade, he cannot recover compensation from either party, unless both parties knew of the double agency at the time of the transaction.'' In other words, the plaintiff's contract was to do, and he did do, much more than merely introduce a prospective seller to a prospective buyer and the rule stated in *Shaffer* v. *Beinhorn, supra,* is not applicable to the facts.

In what has been said we have not overlooked the contention of the plaintiff that the instrument dated April 9, 1931, was the sole embodiment of his contract and that the formal contract dated May 2, 1931, was not his contract but was the contract of Serlis, Coplin & Co. and the plaintiff was only a dummy. But, under the facts of the case at bar we think the plaintiff's contention may not be sustained. Over the objection of the defendants much evidence was introduced tending to support the plaintiff in the position he took. The trial court accepted that evidence and made findings in favor of the plaintiff thereon. The defendants vigorously attack each of those findings. Said findings are very long and it will serve no purpose to insert them in this

decision. The contract dated May 2, 1931, is clear, full, and complete. No fraud is claimed in its execution, nor is any mistake or imperfection of the writing put in issue by the pleadings. Therefore there can be between the parties no evidence of the terms of the agreement other than the contents of the writing. (Code Civ. Proc., sec. 1856.) The document names George L. Broy as purchaser and, on its face, it contains not a single word that the latter was acting as an agent. Parol evidence is not admissible to show he was acting as an agent only. (1 Cal. Jur. 819–821.) ▮ Moreover, the contract contained a condition that the lessee would obtain a permit authorizing it to make the sale. It made the application and obtained a permit authorizing it to sell 200,000 shares at the prices named in the said contract ''net to the'' lessee. To hold that plaintiff is now entitled to compel the lessee to pay to him either commissions or compensation is, the defendants assert, to work a fraud on the statute. (Stats. 1917, pp. 676, 680.) We think that contention is sound. (*Otten* v. *Riesener Chocolate Co.*, 82 Cal. App. 83 [254 Pac. 942].)

From what has been said it will be seen that many findings were made under a misconception of the law. No material issue of fact is involved. It follows that the judgment should be reversed, that the findings should be reframed not inconsistent with what we have said, and that a judgment in favor of all of the defendants should be entered thereon. It is so ordered.

Nourse, P. J., and Spence, J., concurred.

. A petition for a rehearing of this cause was denied by the District Court of Appeal on February 5, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1937.