[Civ. No. 1259.  Third Appellate District.—December 4, 1914.]

## LIBERTY MILLET et al., Appellants, v. JOHN ALFRED TAYLOR et al., Respondents.

LEASE OF FARM—CONSTRUCTION OF—LATENT AMBIGUITIES—GROSS AND NET PROCEEDS—ADMISSIBILITY OF PAROL EVIDENCE.—Where a lease of a farm provided, among other things, that in consideration of the execution thereof, the lessees "will semi-annually on the first day of January and June of each year during the term of this lease and at the expiration thereof, render to said first parties, a just and true accounting of all of the affairs pertaining to the conduct of said farm, and that they will deliver to parties of the first part, or to their order, one equal half part of all the proceeds and crops produced on said farm," and there was nothing else in the lease from which the court could determine whether the parties meant by the use of the word "proceeds" gross or net proceeds, the lease was so ambiguous in this regard that parol evidence was admissible to explain the intention and understanding of the parties.

ID.—CONTRACTS—RULE OF CONSTRUCTION.—It is elementary that it is no part of the office of construction to add to or to take from a contract, but to ascertain what the parties intended by what they have said. If there be no ambiguity in the contract it must speak for itself; but where the language employed is fairly susceptible of either one of the two interpretations contended for, without doing violence to its usual and ordinary import, or some established rule of construction, then an ambiguity arises, which extrinsic evidence may be resorted to for the purpose of explaining. This is not allowing parol evidence for the purpose of varying or altering the contract, or of putting a different sense and construction upon its language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intention of the parties.

ID.—UNLAWFUL DETAINER—MEANING OF LEASE.—It is held in this action of unlawful detainer that the evidence sufficiently showed that

26 Cal. App.—11

the actual agreement between the parties was that the lessees were, at the time specifically designated in the lease, to render and deliver to the lessors, in writing, a just and true accounting of all the affairs pertaining to the conduct of the farm leased, and to deliver to the lessors an equal half share of the *net* proceeds and crops produced on the leased premises.

APPEAL from a judgment of the Superior Court of Napa County and from an order refusing a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

E. S. Bell, for Appellants.

Clarence N. Riggins, for Respondents.

HART, J.—This is an action in unlawful detainer.

The complaint alleges that the defendants were in the possession and occupation of a certain tract of land belonging to the plaintiffs, situated in Napa County, under a lease mutually executed by the parties to this action on the twenty-eighth day of February, 1910; that said lease provided that the same should remain in force for the term of five years from said twenty-eighth day of February, 1910, with an option exercisable by the lessees upon the termination thereof to renew the same for a further period of five years; that, according to the terms of said lease, "the said lessees agreed to render to the said lessors, on the first day of January, 1913, a just and true accounting of all of the affairs pertaining to the conduct of the said farm and to deliver to the said plaintiffs, or their order, one equal half part of all the proceeds and crops produced on said farm and premises. That said defendants, on said first day of January, 1913, failed and refused to render such accounting or deliver to the plaintiffs said one equal half part of all the said proceeds," and "do now fail, refuse and neglect to furnish said plaintiffs with a just and true accounting of all the affairs pertaining to the conduct of said farm and to deliver to said plaintiffs, or their order, one equal half part of all the proceeds and crops produced on said farm and premises"; that, on the seventh day of March, 1913, the plaintiffs demanded in writing from the said defendants such an accounting and the delivery to them

(the plaintiffs) of an equal one-half part of the proceeds of and crops produced upon said farm from the first day of June, 1912, to the first day of January, 1913, within three days after the service of said notice upon them (the defendants), or that they surrender the said premises to the said plaintiffs; that "said defendants have neglected and refused for the space of or more than three days after said demand had been served on them, and do still continue to refuse to render to the said plaintiffs" such accounting or to deliver to them their just proportion of the proceeds and crops produced on said farm during the period mentioned. The complaint contains the further allegation, usual in such cases, of the wrongful withholding by the defendants of the possession of the demised premises after default in the performance of the covenants of the lease and without the permission of the lessors.

The defendants answered the complaint and filed a cross-complaint, in which a reformation of the lease, so that it will conform to the intention of the parties, is prayed for.

The defendants were given judgment upon the issues made by the complaint and the answer thereto, and this appeal, supported by a bill of exceptions, is prosecuted by the plaintiffs from said judgment and the order denying their motion for a new trial.

The trial court permitted the defendants to explain, by parol testimony, certain language of the written lease, and the ruling so made presents the only question submitted for decision by this appeal.

Those parts of the lease in question which are pertinent to the investigation here read as follows:

"In consideration whereof the said parties of the second part hereby covenant and agree that they will properly till and cultivate the premises above mentioned during the term aforesaid in a farmer-like manner and that they will not commit any waste or damage or suffer any to be done; that they will at their own cost and expense keep the fences and buildings on said premises in good repair, reasonable wear thereof and damages by the elements excepted; that they will semiannually, on the first day of January and June of each year during the term of this lease and at the expiration thereof, render to said first parties, a just and true accounting of all of the affairs pertaining to the conduct of the said farm, and

·that they will deliver to said parties of the first part, or to their order, one equal half part of all the proceeds and crops produced on said farm and premises aforesaid."

At the trial the plaintiffs contended, as they contend here, that, under the terms of the lease, and, according to the true intent of the parties as expressed therein, they were entitled to receive from the defendants, on the first day of January and of June of each year during the term of the lease, one equal half part of all the *gross* proceeds and crops "produced on said farm and premises." That this plainly appears from the lease itself, is the contention, and, hence, it is argued, the admission of parol or extrinsic evidence disclosing a different agreement would have the effect of varying the terms of the writing.

On the other hand, the defendants insisted in the court below, as they urge here, that the understanding had by both parties of the meaning of the lease, at the time of its execution, and which understanding does not clearly appear from the language of the instrument, was that the defendants were to return to the plaintiffs, at the times specified in the lease, one equal half part of all the *net* proceeds and crops produced on the leased premises. In other words, the defendants claim that the understanding between all the parties was that the lessees should deliver to the lessors one-half of such proceeds as were realized from the farm as remained after the expenses of feeding the stock and the amount of certain products used by the lessees for family or domestic purposes were deducted.

Thus it was made to appear to the trial court that the instrument was in that respect characterized by a latent ambiguity, and upon that theory it allowed oral evidence explanatory of the intention of the parties with regard to that covenant of the lease.

There are "gross proceeds" and "net proceeds," and who can say to which of these the parties to the lease in this case intended to refer when they used the language: "one equal half part of all the proceeds and crops produced on said farm"? The mere word "proceeds," unaccompanied by some qualifying word or language imparting to it definite scope or signification, cannot itself be said to refer either to gross or to net proceeds, and there is nothing in the language of the other provisions of the lease in the present case which

discloses the sense in which the parties intended to use the word or which sheds any light upon the subject. A "one equal half part of all the proceeds and crops" is, indeed, a vague and indefinite phrase, and we think that the ruling of the trial court, in permitting evidence extrinsic to the instrument itself for the purpose of ascertaining what the parties intended to express by the use of that language, was not only perfectly proper but absolutely necessary. It is true, and, indeed, elementary, that "it is no part of the office of construction to add to the contract or take from it, but it is to ascertain what the parties intended by what they have said. If there be no ambiguity in the contract, it must speak for itself." (*Peterson* v. *Chaix,* 5 Cal. App. 525, 533, [90 Pac. 948] ; see, also, Code Civ. Proc., sec. 1858.) But, where, as is certainly true here, "the language employed be fairly susceptible of either one of the two interpretations contended for, without doing violence to its usual and ordinary import, or some established rule of construction, then an ambiguity arises, which extrinsic evidence may be resorted to for the purpose of explaining. This is not allowing parol evidence for the purpose of varying or altering the contract, or of putting a different sense and construction upon its language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intentions of the parties." (*Balfour* v. *Fresno C. & I. Co.,* 109 Cal. 225, [41 Pac. 876] ; *German Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, [96 Pac. 319] ; see, also, Code Civ. Proc., sec. 1861.)

As before suggested, in the case at bar it was not possible for the court to determine precisely what the parties meant by the use of the language under consideration, either from the language itself or from other provisions of the lease, and, as before declared, it was obviously necessary to a correct determination of that issue to resort to parol or extrinsic evidence, not, as the cases above cited declare, to vary the terms of the writing or insert therein or add thereto anything not embraced within the intentions of the parties, but to explain what they really intended to express by the use of language susceptible of either one of two interpretations, each of which would in no manner or degree do "violence to the usual and ordinary import" of said language. (See *Higgins* v. *California Petroleum Co.,* 120 Cal. 629, [52 Pac. 1080].)

The evidence received under the ruling complained of sufficiently shows that by the use of the language referred to it was intended to express in the lease the actual agreement between the parties, viz.: That the lessees were, at the times specifically designated in the writing, to render and deliver to the lessors, in writing, "a just and true accounting of all the affairs pertaining to the conduct of the said farm," and to deliver to the lessors an equal one-half share of the net proceeds and crops produced on the leased premises. The evidence so admitted further shows that, under the agreement, the lessors were authorized and entitled to feed the stock on the farm from the crops of hay, etc., raised thereon, and that the lessees themselves were likewise authorized to use, for their own purposes, such of the produce of the farm, eggs, buttter, milk, etc., as they might reasonably require for themselves or for their family use. It also appeared from the evidence that the lessees rendered a written statement of the business affairs of the farm for the term referred to in the complaint and delivered to the lessors an equal one-half part of all the net proceeds and crops produced on said premises for the term mentioned in the complaint. The evidence thus referred to sufficiently supports the findings.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.