# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### A. MAGNUS SONS CO. v. OREY et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1923. Rehearing Denied March 12, 1923.)

#### No. 3905.

1. **Evidence ☾450(8)—Contract for sale of crop held to permit evidence of circumstances under which it was made.**

    A contract for the sale of a stated quantity of the hops to be raised on designated property, if so many were raised thereon, and which expressly recited that the sellers represented that the land was leased land, was not so plain and unambiguous as to exclude evidence that one-quarter of the crop grown on the land belonged to the landlords, and that the sellers had delivered their entire share of the crop.

2. **Sales ☾87(2)—Evidence seller did not own portion of crop is competent to show intention.**

    Evidence that the seller of a crop of hops to be grown on leased premises did not own a portion of the crop which belonged to the landlord was competent to show the common understanding of the parties in entering into the contract not to sell thereby the portion of the crop belonging to the landlord.

3. **Courts ☾99(2)—Decision sustaining demurrer to original answer held not law of case as to construction of contract.**

    Where a demurrer to the original answer in an action for the sale of hops grown on leased premises was sustained on the ground that the answer was insufficient to warrant reformation of the contract, because it did not allege that the mistake was mutual, it was not the law of the case as to the construction of the contract, as including in the sale the landlord's portion of the crop, even though the judge, in ruling on the demurrer, stated that he found no ambiguity in the contract.

In Error to to the District Court of the United States for the District of Oregon.

Action at law by the A. Magnus Sons Company, against Adam Orey and another. Judgment for defendants, and plaintiff brings error. Affirmed.

The opinion of Bean, District Judge, on sustaining a demurrer to the answer, is as follows:

---

☾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is an action to recover damages for an alleged failure to deliver hops in pursuance of a written contract. It appears from the complaint that defendants agreed to sell and deliver to plaintiff 60,000 pounds of hops of the crop to be raised and grown by them during the year 1919 on certain described property. The contract was to have preference over all others, concerning the hops, made by these sellers. Plaintiff was to advance $1,800 in the spring, and for picking purposes 5 cents per pound the 1st of September. These advances were made. Defendants raised about 40,000 pounds of hops, but delivered to plaintiff only some 29,000 pounds. This action is brought to recover damages for failure to deliver the balance. Defendants in their answer alleged, among other things, that they were lessees under a contract by the terms of which they were required to deliver a certain part of the hops to the landlord; that they did make such delivery, and delivered the remainder to plaintiff, which they claim was a compliance with their contract.

The contract itself, however, is very definite and certain. It provides for the delivery of a certain number of pounds of hops, of the crops grown by defendants during a certain year on certain premises. There were no exceptions in the contract. Indeed, it indicates all the way through that the parties intended the delivery of 60,000 pounds of hops, if that quantity was grown by defendants during the year. This is indicated very clearly by the fact that in September, 1919, plaintiff made an advance under the contract of $3,000, which was 5 cents a pound on 60,000 pounds. It is true, where the terms of a contract are ambiguous, parol evidence is admissible to explain its terms. Thus, where a contract stipulated that a lessee should pay to the lessor one-half the proceeds of the crops produced, the courts held that parol evidence is admissible to determine whether the word "proceeds" was net proceeds or gross proceeds. There are no such ambiguities in the contract in suit.

It is also alleged in the answer that at the time the contract was made there was a custom, known to the seller and purchaser of hops, that where the seller was a lessee a part of the crop necessarily went to the landlord, and that this should be construed with reference to that custom. A custom may be important in the interpretation of a contract, but it cannot be resorted to for the purpose of varying or adding to the plain language of the instrument. I take it, therefore, the motion to strike out the allegations of the answer with reference to the obligation of the defendants to their landlord and the delivery of hops to him, and the custom prevailing at the time the contract was made should be allowed.

It is also alleged or stated in the answer that the contract, as written and signed, by mistake omitted the condition that defendants should not be required to deliver to plaintiff the landlord's portion of the hops. It is true that in this court the defendant in a law action may set up an equitable defense; but the answer does not go far enough to do so. It does not allege what the original contract was, or that by mutual mistake the provision permitting the delivery of hops to the landlord was omitted, and without allegation of that kind the answer would not be sufficient to justify a decree reforming the contract.

The demurrer to the answer is sustained, with leave to amend, if the defendants so elect.

Bauer, Greene & McCurtain, of Portland, Or., for plaintiff in error.
Ben C. Dey, Alfred A. Hampson, Roscoe C. Nelson, and George L. Buland, all of Portland, Or., for defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

### Statement.

GILBERT, Circuit Judge. The plaintiff in error brought an action against the defendants in error to recover damages for failure to deliver hops in pursuance of a written contract. The hops were to be grown

by the defendants on leased lands. The plaintiff alleged that the total amount of hops produced by defendants on the lands described in the contract was 38,429 pounds, leaving 9,607 pounds undelivered; that the contract price of the hops was 11½ cents per pound, but that the plaintiff had voluntarily increased the same to 16 cents. The measure of damages fixed by the contract in case of default was the difference between the contract price and the market value at Salem, Or., on October 31 of that year. The complaint alleged that the market value on that date was 85 cents per pound. The plaintiff demanded judgment in accordance with the stipulation. The defendants answered, alleging that the contract required them to deliver to the plaintiff only the amount of the hops so raised during the year, "after the owner of said premises had retained one-fourth of the total amount of hops grown thereon as crop rental for the use of said premises"; that for the year 1919 the defendants leased from one Hop Lee the lands described in the contract under a crop rental of one-fourth of the hops grown; that the contract was not intended to, and in fact did not, include said one-fourth of the crop; and that the plaintiff knew of the lease by the defendants from Hop Lee, and knew that the latter was to have one-fourth of the crop as rental. The defendants further alleged the existence of a custom and usage, in the hop business, that hop ranches were leased upon a crop rental rather than upon a cash rental. The case was tried to a jury. The jury found for the defendants, and judgment was entered accordingly.

### Opinion.

The contract by its terms required the defendants to sell and deliver to the plaintiff 60,000 pounds of hops of the crop to be raised and grown by the defendants in the year 1919 on certain described real estate. The crop raised was approximately 40,000 pounds, of which three-fourths were delivered to the plaintiff. The question at issue was whether the remaining one-fourth was included in the contract, so that the defendants were obligated to deliver the same.

The plaintiff contends that but three issues were made for trial before the jury: First, the quantity of hops grown; second, the quantity withheld by the defendants; and, third, the market value of the hops at the time of delivery; and that, inasmuch as a stipulation was entered into showing the quantity of hops grown and the amount withheld, and that the market value was admitted, the plaintiff was entitled to a directed verdict in its favor. But it remained for the court to construe the contract, and to determine whether it imposed upon the defendants the obligation to deliver all the hops which they raised on the land. It is said that it was the duty of the court to declare the meaning of the contract, which, it is asserted, was certain, plain, and unambiguous, and that it was error to receive extrinsic evidence to throw light upon its meaning. Testimony was admitted of conversations and negotiations of the parties prior to and at the time of the execution of the contract, for the purpose of enabling the court to interpret the contract, and this upon the theory that the contract sued upon was uncertain or ambiguous.

[1] We are not convinced that the contract was of such certain and unambiguous nature as to preclude the admissibility of such testimony. The contract itself expressly recited that the defendants represented to the plaintiffs "that they lease the above-described property." The contract did not in plain terms obligate the defendants to deliver to the plaintiff all of the hops to be raised upon the leased premises. It was an obligation to deliver 60,000 pounds "of the hops," if so many were raised. The plaintiff knew that the defendants were required to pay one-fourth of the crop as rental to their landlord. It is not to be supposed that the contract was intended to require the defendants to deliver hops which they did not own, and which they could not with any certainty bind themselves to acquire. It is obvious that they had no control over the hops which were to be paid as rental, and there was nothing in the contract to indicate that it was the intention of the parties that the defendants should buy in the open market hops as a substitute for the hops which belonged to the landlord. The contract, although in form a contract to deliver a certain quantity of hops, was in fact but a contract to deliver the hops raised by the defendants on a specified tract of land.

[2] We think it was not error, therefore, to permit a witness to testify that he told the plaintiff, before the contract was entered into, that the hopyards were leased upon one-quarter rental. If, as a matter of fact, the defendants did not own the one-fourth which went to the landlord as rental, and were unable to control that portion of the crop, or bind themselves by contract to deliver it, it was proper to show that fact by testimony for the light which it might afford upon the common understanding of the parties in entering into the contract. Millet v. Taylor, 26 Cal. App. 162, 146 Pac. 42; Parks v. Elmore, 59 Wash. 584, 110 Pac. 381; McCulsky v. Klosterman, 20 Or. 108, 25 Pac. 366, 10 L. R. A. 785; Brown v. Bartlett, 201 Mich. 268, 167 N. W. 847.

[3] The defendants had filed an answer alleging mutual mistake in the contract, and asking for reformation of the instrument. Judge Bean sustained a demurrer to the answer, and observed, in his opinion, that he found no ambiguity in the contract in suit. The ruling on the demurrer, the plaintiff contends, fixed the law of the case, so that, when the cause later came on for trial before Judge Wolverton, he was bound by the construction of the contract so announced by Judge Bean, and hence it was error to permit evidence on the theory that there was ambiguity. Judge Wolverton did not so regard Judge Bean's decision. On the trial, he said:

"I have read that opinion of Judge Bean, and gone into it pretty thoroughly, and I might say, further, I have consulted with Judge Bean about it, and I am of the opinion that that decision does not decide the exact question which is now before us."

He further observed that the purpose of introducing the evidence was to give the court the position of the parties at the time, and the conditions that prevailed, so that the court might be better enabled to say what the parties meant when they entered into the contract. Judge Bean overruled the demurrer to the first answer, on the ground that "it did not allege what the original contract was, or that by mutual

mistake the provision permitting the delivery of hops to the landlord was omitted," and said that, without allegation of that kind, the answer would not be sufficient to justify a decree reforming the contract. The defendants thereupon filed the amended answer, in which it was denied that the contract bound them to deliver any of the crop of hops by them raised on said land in excess of the actual amount that the defendants were to receive as their share of the crop, and they alleged that the written contract did not express the true agreement and understanding of the parties thereto; that the true agreement was that the plaintiff was to have the defendants' share of the crop of hops to be raised on the premises in the year 1919. Issue was joined on that answer, and upon the pleadings thus framed the cause went to trial. What Judge Bean actually decided was that no case was made by the original answer for reformation of the contract. We find nothing counter to that decision in any of the rulings of Judge Wolverton.

The judgment is affirmed.