## WILEY v. LEONARD.*
### No. 4141.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

T. A. Carter, of Alexandria, for appellant.

George J. Ginsberg, of Alexandria, for appellee.

PALMER, J.

On or about August 30, 1930, plaintiff sold to the defendant a small sawmill and sawmill rigging for the sum of $250. On the date of the sale the defendant paid plaintiff $125, at which time plaintiff executed the following document:

"August 30, 1930.

"Received from Walter P. Leonard One hundred twenty-five dollars, $125.00, as payment on sawmill. The other $125.00 to be paid when all my heirs agree on same to be

*Rehearing denied June 29, 1932.

paid to me, and I am to install the mill and prove it to cut 2500 ft. lumber daily."

The property belonged to the community of acquets and gains formerly existing between plaintiff and his deceased wife, but plaintiff claims that he had authority from all his children, except his son Ralph, to make the said sale and to collect the purchase price thereof, by virtue of a certain document signed by them, dated the 15th of August, 1924, and passed before J. B. Daniel, justice of peace. That document reads:

"State of Louisiana, Parish of Rapides

"Be it known that we, the heirs of (Mrs.) William Wiley, respectfully request and agree that our father, William Wiley, is to have and enjoy all of the rights and privilege of the property belonging to the said estate and also the wrights (rights) to sell any of the movable property of said estate to satisfy all the outstanding debts such as the funal (funeral) and doctor's bills, also a small store account, and the said William Wiley is to rent the land out to the benefit of himself and the estate."

As to Ralph Wiley, the evidence shows that he personally advised defendant that his father had his consent to make this sale and to receive the purchase price thereof. Defendant admits the purchase of the mill and fixtures for the consideration alleged, but avers that the $125 balance due is not to be paid plaintiff until the heirs of his deceased wife have consented thereto, and further, not until the sawmill will cut 2,500 feet of lumber per day, which defendant alleges it will not do, although plaintiff guaranteed that it would do so.

Defendant, with his answer, deposited in the registry of the court the sum of $125 under the following allegations:

"Defendant further shows, and herein deposits in the Registry of the Court, the sum of $125.00, in the event judgment herein be against him, and for the purpose of avoiding and obviating further costs in these proceedings."

Plaintiff moved to take judgment against defendant for the amount thus deposited in the registry of the court, plus the accrued costs, together with 5 per cent. per annum interest on the amount sued for from judicial demand, alleging that defendant had admitted the indebtedness sued on. He secured a rule on the defendant to show cause why judgment should not be rendered against him on the face of the answer. The court, upon trial of the rule, rejected the motion. In connection with defendant's answer denying liability on the cause of action sued on, he asked for a rescission of the sale of the sawmill and rigging on the grounds that it would not cut the guaranteed amount of 2,500 feet of lumber per day. The lower court rejected the demands of plaintiff at his cost, and gave defendant judgment against plaintiff, authorizing the withdrawal from the court registry of the $125 deposited with the answer, and rescinding the sale of the sawmill and rigging and for judgment against plaintiff in the sum of $125 recovering the amount paid him by defendant when the purchase was made. From that judgment plaintiff prosecutes this appeal.

The defenses urged against plaintiff's demands are: (1) That the balance of the purchase price was not to be paid plaintiff until the heirs of plaintiff's deceased wife consented, and that they would not give that consent; and (2) that the sawmill was sold on a guaranty that it would cut 2,500 feet of lumber per day, and falling short of that guaranty, the sale should be rescinded and defendant refunded the cash paid, or that the price should be reduced proportionately with the deficiency in the cutting capacity of the mill. We shall consider these defenses in the order stated.

Did plaintiff meet the obligation of showing that the heirs of his deceased wife had consented to his authority to collect the purchase price of the sale?

Plaintiff is relying upon the said document signed by all his children, except as to his son Ralph, and of date August 15, 1924, and upon the fact that his said son Ralph had notified defendant that he was willing for the price to be paid to his father.

There is no dispute but what Ralph Wiley did advise defendant that his father had his consent to collect the price of this sale, but as to the other heirs, that authority existed, or did not exist, according to whether or not the said written stipulation of August 15, 1924, conferred upon plaintiff that right. The document in question shows that William Wiley did have the right to sell any of the movable property of the estate of his deceased wife "to satisfy the outstanding debts such as funeral and doctor's bills." The evidence discloses that at the time the sawmill was sold to the defendant, the funeral and doctor's bills had been paid by plaintiff with money earned by his own labor. It is not claimed that any other debts existing at that time are due and payable.

Notwithstanding the said written statement signed by all but one of the heirs, defendant would not pay one-half of the sale price of the sawmill at the time of the purchase. The evidence discloses that at least two of plaintiff's children were claiming their portion of this balance and so notified defendant. The receipt which plaintiff executed at the time the one-half of the purchase price was paid him specifies that, "The other $125.00 to be paid when all my heirs agree on same to be paid to me." No other proof is needed to show that even plaintiff was not then standing upon that written stipulation,

318

as authority for him to collect this balance of $125. Even now two of plaintiff's children are denying plaintiff's right to collect this balance. If plaintiff expected to stand on this written document as full authority from the children who had signed it for him to collect this balance, why did he specify in this receipt that the balance was to be paid only when all his heirs should agree that he should receive it?

Defendant clearly was trying to protect himself from a double payment of this balance. All agree that the mill was community property of plaintiff and his deceased wife, so to protect himself defendant first deposited this balance with the bank to be paid plaintiff when all the children agreed for him to receive it, and later defendant withdrew the deposit from the bank and paid it into the treasury of the court.

Unless the sale is rescinded for redhibition, the deposit should remain in the treasury of the court, subject to the terms of the agreement to pay it to plaintiff when all his children agree to it; otherwise to be paid to those who may be lawfully shown to be entitled to it.

■ The other question for our decision is: Can defendant avoid the sale on the grounds of redhibition? We have examined the evidence in this case in vain for any proof of any redhibitory defects. Defendant bought the mill upon his own inspection. There is no claim that there were any hidden defects or defects of any other character. All that defendant contends for in this regard is that plaintiff represented that the mill would cut 2,500 feet of lumber per day, and that it would not measure up to those representations. Plaintiff insists that the mill was never properly installed; that he was not accorded the privilege of installing the mill according to his agreement with defendant. He testified, and he proved it by a number of other witnesses, that the mill had cut the amount of lumber which he represented that it would cut. He said it needed some adjustments and repairs which, when made, would put it in condition to cut 2,500 feet per day. The evidence preponderates in favor of this contention. We are convinced that the defendant did not give plaintiff a full opportunity to make the mill cut the amount of lumber plaintiff represented it would cut, when the sale was made. Defendant is not a mill man and seems to have attempted to operate the mill with untrained labor, except, perhaps, the witness Wainwright, who had had some previous experience as a sawyer in a large sawmill, but not in the operation of a small mill, such as this one is.

It is doubtful if the representation made as to what the sawmill would cut can be considered as material. At most it was only plaintiff's estimate. No redhibitory defects in the mill were shown.

■ The defense of redhibition pleaded by defendant is a special defense, the burden of proving which rested upon him. He failed to discharge that burden.

The judgment of the lower court is reversed, and it is now ordered, adjudged, and decreed that the deposit of $125 made by defendant in the registry of the court to cover the balance due on the purchase price of the sawmill and rigging purchased from plaintiff by defendant remain there to be paid to plaintiff if, and when, all his children consent thereto in writing, duly acknowledged before a notary public; otherwise to be paid to the person or persons hereafter to be judicially determined to be entitled thereto, defendant to be relieved from any further liability or responsibility in the premises, except to pay all costs as hereinafter decreed.

It is further ordered, adjudged, and decreed that the demands of defendant for a rescission of the sale in question and the return of the cash payment made on the purchase price be and they are hereby rejected.

It is further ordered, adjudged, and decreed that defendant pay all costs of this suit.

DREW, J., dissents.