This is a suit brought by a shoe manufacturing company of Boston, Massachusetts, to recover from the defendant, D. R. *Page 37 
Hendricks of Bogalusa, in the Parish of Washington, the sum of $1,741.55 for certain lots of shoes sold and delivered to him between March 3, 1947 and April 29, 1947. The shipment consisted of ten lots, six of which were shipped during the month of March and the other four during the month of April. The suit being one on an open account, the allegations of the petitioner are very plain and simple and the demand is for judgment for the stated sum of $1,741.55 with legal interest from April 29, 1947.
The defense, as reflected in the answer of the defendant, is that the shoes were bought from plaintiff's salesman on open samples and upon delivery it developed that the shoes delivered did not conform to the samples; that they were inferior in quality, grade and workmanship, in every respect. It is admitted that nothing was paid on account of the shoes delivered because the shoes were not the same as had been ordered and it is alleged that plaintiff was advised immediately by the defendant to that effect and the shoes were returned.
Assuming the position of a plaintiff in reconvention, defendant sets out that this order of shoes represented an investment of $1,741.55 on which he would have realized the usual and customary profit of 33 1/3% had the shoes been satisfactory and of the grade and quality which he had bought. He alleges that he therefore was deprived of a profit of $580.51 which he is entitled to recover as damages from the plaintiff and he prays for judgment in reconvention accordingly. Defendant then avers that from the first lot of shoes, he disposed of several pairs which in the aggregate amounted to the sum of $77.15, according to his books, and that he has made a legal tender of that sum to plaintiff's attorney who refused to accept the same.
It is therefor noted that the defense is based entirely on the defective quality of the merchandise purchased and legally speaking, payment is sought to be avoided altogether on the ground of a redhibitory vice.
After trial of the case in the district court, judgment was rendered in favor of plaintiff in the sum of $1,449.05. The judge refused to allow the plaintiff to recover for the last two lots which defendant had rejected. The trial judge took the position that as defendant had already returned the other shoes, he had the right to assume that these two shipments were also inferior to the sample and since he did not accept delivery of these two lots no liability attached as to these.
From the judgment rendered, defendant took a devolutive appeal and plaintiff has answered the appeal praying that the judgment be amended by increasing the amount to the full sum demanded of $1,741.55.
The first question to be considered is whether the shoes that were shipped in bulk by the plaintiff conformed in grades, quality and workmanship to the sample which plaintiff's salesman had exhibited to the defendant, for if they did not, certainly defendant could not be forced to accept the shipment. On the other hand, if they were of the same grade and quality, it is equally certain that he was obligated to comply with the conditions of the sale by making a payment at the time agreed upon or in the regular course of business.
The trial judge, as we have stated, held that the shoes did not conform to the samples. Testimony on this point is a bit conflicting. The witnesses who testified for the plaintiff all gave their testimony by deposition. One was the president and treasurer of the plaintiff company, another the sales manager, the third a shoe buyer of Boston, Massachusetts, with ten years experience in that business, and the fourth a shoe manufacturer of Brookline, Massachusetts, with twenty-nine years experience as a buyer, foreman of various departments, sales manager and owner of such businesses.
The president's deposition is to the effect that he had no personal knowledge of the transaction involved in this case, but naturally he takes the position that the samples which were shown to the defendant were representative of the shoes that were shipped and in answer to one of the interrogatories states that they were the same quality, material and workmanship as the shoes which had been ordered by defendant. *Page 38 
The deposition of the sales manager of the plaintiff company is to the same effect as that of the president. In fact it is so much the same that it caused counsel for defendant to look upon both depositions with a great deal of suspicion. The shoe buyer with ten years experience who testified for the plaintiff stated that he had bought shoes from the plaintiff, by sample, and the shoes were satisfactory. He examined some of the shoes sold to the defendant on or about March 12, 1947 and found them to be physically in good condition at the time they were manufactured. He says they were saleable at normal prices. The last of these witnesses had never bought shoes from the Star Company. He did however, inspect some of the shoes involved in this case and his opinion was that from the manufacturer's standpoint, they seemed to have been reasonably well made and competitively saleable in their price grade.
For the defendant, besides himself, the witnesses who testified on this point were the plaintiff's salesman who sold him the shoes and two clerks who sold shoes in his store. They all, including the salesman, testified that the shoes were not the same kind of shoes which had been ordered on the sample the salesman had displayed to him.
With this conflict in the testimony, the finding of the trial judge on this very important point is entitled to very great weight and consideration. You cannot regard the testimony of the officials of the plaintiff company as that of witnesses who were not without interest, the same as you cannot regard the testimony of the defendant himself and, to a certain extent, that of his employees. We are not convinced however that the two disinterested witnesses who testified for the plaintiff afforded very strong proof that the shoes were the same kind of shoes as were represented by the sample. All that they testified to, and which has any bearing on the case, is that the shoes they examined were satisfactory from the manufacturer's standpoint, one even qualifying his statement by saying that they seemed to be so satisfactory. They referred to them as being physically satisfactory but that of course, does not mean that they conformed to the samples which the salesman showed the defendant.
If there is testimony from any one witness which would turn the weight of proof on one side or the other on this point, it is that of plaintiff company's salesman, Leonard Toppino, who very definitely states that the shoes were not of the same quality and grade as represented by the sample exhibited to the defendant. The witness did not testify in open court. It seems that at the time he was under treatment for some nervous disorder at a sanitarium in Covington and his doctor gave a certificate that it would not be good for him to appear in court and be subjected to too much questioning by the attorneys in the case. His testimony is attacked by counsel for plaintiff on the ground that they were not able to probe his conscience by a proper oral cross-examination. They were, however, permitted to address cross-interrogatories to him which would have served the same purpose. We think that under the circumstances, the method under which his testimony was given was proper and we find nothing to detract from it in any way.
We therefore conclude that the trial judge was correct in holding that the shoes that were delivered to the defendant did not come up to the samples and that plaintiff can only recover if the record reveals that the defendant did not complain within a reasonable time of the defective quality and workmanship of the shoes. The important point involved here is what constitutes a reasonable time within which to make such a complaint. In determining that issue we have to take into consideration not only the facts in the case but all the surrounding circumstances attending those facts.
It is shown, and not disputed, that the shipments began to reach the defendant early in the month of March. According to the defendant himself, after he received the first shipment he took the shoes out of the cases and examined them, not only as to quality but as to how they would fit. He states that the only way to examine shoes as to fitting is to try them on customers. After trying them on some of his *Page 39 
customers he found that they were defective in the way in which they fitted, and the quality of the shoes themselves was not of the standard of quality of the shoes he had bought. He sold, according to his books, $77.15 worth of these shoes which he estimates represented about twenty pairs. According to the testimony of witnesses for the plaintiff, he does not account for forty-two pairs of shoes. As we understand the testimony, he kept receiving shipments from time to time and he kept selling the shoes and it was not until the beginning of April, according to his own testimony that he says he wrote plaintiff, complaining about the shoes and stating that they were unsatisfactory and were not the shoes he had ordered. He did not have a copy of that letter because he says that it was written in long hand and he did not make a copy of it. We note a letter from the plaintiff company addressed to him which is dated May 6, 1947, in which no reference whatever is made to any letter received by them during April nor at anytime. On the contrary it is distinctly stated in that letter that their records "do not indicate receiving any correspondence regarding cancellation of your orders." As that letter begins by stating, "We are in receipt of your statement showing returns of 349 pairs of shoes against which you have apparently sold approximately forty-two pairs," it would seem that the first notice plaintiff had of any cancellation, except by receipt of the statement of the returned merchandise, was at the beginning of May, since their letter is dated May 6, 1947.
Let us concede the defendant's point that in order for him to definitely see for himself that the shoes were not up to the standard of the samples, as to fitting, it was necessary for him to try them on customers to whom he sold them, it appears to us that beginning with the early part of March, he would have had a reasonable time during the whole of that month to so satisfy himself. It is also very significant, as stated by the trial judge, that he had no record of any one customer who came back to him and complained about the shoes he had sold. The burden of proof was on him to show that he kept these shoes this long in order to try to satisfy himself as to their quality and fitting, and if they did not come up to standard, he should have called some of these customers to support his contention.
The law in Louisiana on the question involved in this case is succinctly stated in the case of William Whitman and Company, Inc., v. Solomon, La. App., 144 So. 292, 293, as follows: "Under the laws of this state, when goods are sold on sample, it is the duty of the purchaser to examine them when delivered and, if they are not up to grade or quality, to reject them within a reasonable time. If the purchaser uses the material without objection, he is considered as having waived whatever defects may have existed in the material, where such defects might have been discovered upon simple inspection. Rev.Civ. Code, Art. 2521; Fairchild Auto Company v. Reed, 12 Orleans App. 351; Millaudon v. Price, 3 La. Ann. 4; Szymanski v. Urquhart, 5 La. Ann. 491; Rocchi v. Schwabacher Hirsch, 33 La. Ann. 1364; Shultz v. Henderson, 134 La. 263, 63 So. 897; Corpus Juris, Volume 55 Verbo 'Sales,' § 268." In their brief, counsel for defendant say that they fully understand the purposes and the requirements of Civil Code, Article 2521, but that in the present case the shoes were returned within a reasonable time after the establishment of a defect in their quality, "which was definitely not discernable upon simple inspection."
The testimony of the defendant and his witnesses who sold shoes in his store is all to the effect that they observed at once, upon receiving the shoes, that they were not the same shoes as represented by the samples which had been displayed by plaintiff's salesman. We have already referred to defendant's own testimony on this point and might refer to that of Miss Wilda Collins, one of his employees who said that she was present when the shoes were bought from the samples. Her testimony is that the sample she saw looked like a very expensive shoe but when the shoes were received they were altogether different shoes; "not the same shoe at all" and they were inferior to the shoes represented by the samples. We can refer to the testimony of Mrs. L. E. McLain, another employee of the defendant. She too was *Page 40 
present when the shoes were ordered on the samples and states that when the shipment was delivered the shoes were not the same as to materials and fitting, especially in materials. We find therefore that whatever defects appeared, or in whatever manner the shoes did not conform to the samples, was not only readily discernible upon simple inspection but that these defects, and lack of conformity had been actually discerned by these parties. If by their statement counsel also mean that it might have taken a longer time to inspect and establish the defects, especially the fitting of the shoes, then we revert to what has already been stated that during the whole of the month of March, defendant actually sold between 20 and 40 pairs of these shoes and certainly that should have given him a reasonable time and opportunity within which to establish any such defect with regard to fitting, and make proper complaint.
On that branch of the case we agree with the ruling of the trial judge that under the facts established and the circumstances shown, the defendant waived whatever defects which he not only could, but did discover upon inspection of the shoes and not having made complaint within a reasonable length of time, such defects were not among the number of redhibitory vices which entitled him to a cancellation of the sale. C.C. Art. 2521.
We have to disagree with the trial judge, however, on the proposition that with regard to the last two shipments of shoes, defendant had a right to assume that they also would be found not to conform to the samples and that they were properly rejected by him. Under the theory by which he was held liable for the previous shipments, it is seen that inspection upon delivery was found to be a necessary prerequisite to his rejection. In the cited case of William Whitman Co. v. Solomon it is stated that it is the purchaser's duty to examine upon delivery before rejecting the goods he bought. Under that theory he has no right, based on what facts were disclosed by his inspection of previous shipments, to assume that all remaining deliveries would also be defective.
The defense pleaded is a special one which casts the burden of proof on the defendant. He offered no specific proof with regard to these two last deliveries of shoes ordered by him and relied solely on an assumption that like all previous shipments they did not conform to the samples on which he bought. We do not think that the district judge should have relieved him of liability for those two shipments without more proof than that and therefore we find it necessary to amend the judgment in that respect.
For the reasons stated, it is ordered that the judgment appealed from be amended by increasing the sum awarded from $1449.05 to $1741.55 and that as thus amended, it be affirmed at the costs of the defendant, appellant herein.