Mc-BRIDE, Judge.
Plaintiff filed this suit against defendant for the amount allegedly due on a written contract of sale dated March 22, 1949, wherein defendant purchased from plaintiff approximately 215,000 feet of túpelo gum logs, located in a pond at plaintiff’s Thibo-daux, Louisiana, plant, for the price and sum of $25.00 per thousand feet, and has perfected this appeal from a judgment below dismissing its suit. The purchaser bound himself to remove the logs from the pond “in the most expeditious manner practicable” at his own expense.
It was stipulated at the trial that during March, April, and May of 1949 defendant removed 164,267 feet of logs from the pond. At the time the contract was consummated, defendant paid $2500 on account of the purchase price, and on July 20, 1949, made a payment of $809.88. It was further stipulated that the said payments amounted to the price of all logs removed, except 31,872 feet which defendant contends was un-merchantable. It was further stipulated *49 that the defendant has not removed the balance of the logs in the pond; in answer, defendant contends that he rejected the remaining logs because they are culls and, therefore, unmerchantable.
In its petition, plaintiff prayed for a judgment for $1690.11, but in argument and brief counsel for plaintiff states that defendant’s indebtedness is $1639.10, made up of the following: $796.80 for the 31,872 feet of logs which defendant removed from the pond but which he claims was un-merchantable, and $842.30 for the logs remaining in the pond.
The sale to defendant was complete. There was nothing uncertain about the transaction. The approximate amount of logs was set out in the bill of sale, as well as the price and location of the logs. Therefore, the thing, the price, and the consent are all present in this transaction. See Dodd v. Horan, 14 La.App. 47, 129 So. 411.
Defendant, asserting a special defense that some of the logs were not of merchantable quality, under the law must bear the burden of making proof of such special defense. See Wiley v. Leonard, La.App., 142 So. 316; Chas. A. Kaufman Co. v. Gillman, La.App., 142 So. 159; John Bonura & Co. v. Rayville Fruit Co., 19 La.App. 707, 122 So. 77.
The logs had been placed in the pond about June or July of 1947, and the evidence is to the effect that such logs, which were submerged in water, will keep from three to five years. Three sample logs had been taken from plaintiff's pond to defendant’s Kenner plant for cutting and examination on March 18, 1949. The evidence further shows that on March 22, 1949, when the contract was confected, there were approximately 215,000 feet of logs in the pond, and that at the time the defendant stopped removing logs from the pond there remained therein approximately 50,000 feet. Defendant made no complaint as to the quality of the logs during March, April, and May of 1949, while the removal operations were being conducted.
The only evidence introduced by defendant to support his special defense is his own testimony that after the logs were cut into veneer at his Kenner plant, the Great Southern Box Company rejected three carloads of the veneer. The assistant manager of the wire-bound-box department of the Great Southern Box Company testified that two carloads of veneer, containing each about 18,000 to 22,000 board feet, shipped to his company by the defendant, were rejected because the veneer had an odor, but we are unenlightened as to the nature or cause of the odor, or how it affected the rej ected veneer.
It will be noticed that the testimony of the assistant manager does not coincide with that of the defendant. According to the former, two carloads of veneer were rejected, while Raziano’s statement is that three carloads were rejected. There is absolutely no testimony linking the veneer, whether it be two or three carloads, rejected by the Great Southern Box Company to the logs which plaintiff sold the defendant.
Raziano admits that he saw the veneer only after it had reached the manufactured stage, and could not know from what logs it had been cut. Of course, the assistant manager could not know.
Defendant himself made no- attempt to inspect the logs before they were cut into veneer, and stated “Well, that’s what we had our logging foreman for.” However, the foreman was never produced as a witness, and it seems to us that the unaccounted for absence of such an important witness is damaging to the contentions of defendant.
The defendant also attempted to show that he manufactured at his Garyville mill another type of lumber from - some of the logs, and that complaints were received from a furniture company in Memphis that the lumber was “blue.” Again, no explanation was made as to the significance of the blue color of the lumber, and whether lumber of that color is unuscable or defective. Furthermore, no corroborating testimony was adduced.
Although the logs were, removed ■from the pond during the months of March, *50 April, and May of 1949, the defendant did not make complaint as to their merchantability until July 15, 1949, after the veneer is said to have been rejected by the box company. It seems to us that if the logs were defective and unmerchantable, and not up to the sample run of March 18, as contended by the defendant, either he or his mill employees surely would have detected their condition before they were out into veneer or lumber. It was the legal duty of the purchaser to examine the logs, and if they were not up to grade or quality to reject them within a reasonable time. Star Shoe Co. v. Hendricks, La.App., 40 So.2d 36.
As to the logs remaining in the pond, there is not one word of testimony even remotely tending to show them to be culls or unmerchantable logs, as alleged in the answer of defendant.
 The testimony of plaintiff's witnesses convinces us that there were approximately 50,000 feet remaining after the defendant discontinued his operation of removing logs from the pond. While it is not shown that there are exactly 50,000 feet of logs in the pond, we believe that the plaintiff is entitled to a judgment based on 50,000 feet. The word “approximately” is a synonym of the word “about,” which was used in a contract which concerned the Supreme Court in the case of Gallaspy v. A. J. Ingersoll & Co., 147 La. 102, 84 So. 510, 512. The Court quoted with approval what had been said in several cited cases, viz.: “ ‘The addition of the qualifying words “about,” * * * and the like, * * * is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight.’ Brawley v. United States, 96 U.S. 168, 24 L.Ed. 622; Peterson v. Chaix, 5 Cal.App. 525, 90 P. 948; Sewall v. Wood, 135 F. 12, 67 C.C.A. 580; Norrington v. Wright, 115 U.S. 188, 6 S.Ct. 12, 29 L.Ed. 366.”
We believe that the quantity of logs remaining in the pond has been proven with legal certainty, notwithstanding the witnesses’ use of the word ‘'‘approximately.”
For some reason not shown' by the record or explained to us by counsel, plaintiff claims $842.30 for the remaining logs, the amount claimed being less than the contract price at the rate of $25 per thousand feet. However, be that as it may, having demanded less than that which is due, and not having timely augmented his demand, plaintiff must lose the overplus. Code Prac. art. 156.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of The Mengel Company and against defendant for the full sum of $1639.10, with legal interest from judicial demand; defendant-appellee is to pay the costs of both courts.
Reversed.